Yoder *v.* Philadelphia, Appellant, et al.

Yoder *v.* Philadelphia (et al., Appellant).

Argued April 30, 1934. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*David I. Scanlon,* with him *Bernard J. O'Connell,* for Philadelphia Rapid Transit Company, appellant.

*James Francis Ryan,* with him *John J. K. Caskie* and *David J. Smyth,* for City of Philadelphia, appellee, No. 171, appellant, No. 214.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for Reading Company, appellee.

OPINION BY MR. JUSTICE MAXEY, June 30, 1934:

Plaintiff instituted this action in trespass against the city of Philadelphia to recover damages for injuries

which she received when the front wheel of an automobile in which she was a passenger ran into a hole in the street, causing the automobile to skid into an iron pillar supporting a railway bridge. The city, by writs of scire facias issued under the Act of April 10, 1929, P. L. 479, as amended, joined as additional defendants, on the ground of liability over, the Reading Company and the Philadelphia Rapid Transit Company. At the trial the jury returned a verdict of $9,000 for the plaintiff against the city, and a verdict for the city against the additional defendants in the same amount. Subsequently, the court below entered judgment upon the verdict for the plaintiff against the city and for the latter upon its verdict against the P. R. T. Company but entered judgment n. o. v. in favor of the Reading Company. Two appeals were taken. The P. R. T. Company has appealed from the judgment entered against it, and the city has appealed from the judgment n. o. v. entered in favor of the Reading Company.

The accident occurred about 2:00 a. m., February 1, 1932. The weather was cold, but the streets were generally free of ice or snow. The automobile in which plaintiff was a passenger was being driven north on Richmond Street, Philadelphia, at a point where the street passes under an iron bridge carrying the railroad tracks of the Reading Company. A number of upright steel girders along the curb support this bridge. It was testified that on the street underneath the bridge there is usually a considerable amount of water as the result of dripping from the bridge. On the night of the accident the street was covered with slush and ice as a result of this dripping. There are on Richmond Street two street car tracks of the P. R. T. Company. The Belgian blocks constituting the "runner" immediately adjacent to the easternmost rail of these tracks had become depressed in one place, about six inches, causing a hole in the street, and this hole had become filled with "slush." Plaintiff claimed that the automobile in which

she was a passenger struck this hole, skidded on the icy street against the bridge pillars on the east side of the street, and then skidded across the street, crashing into the pillars there. Plaintiff's averments had sufficient testimonial support and the judgment in her favor is not questioned.

The jury specifically found, in answer to a question submitted to it by the trial judge, that the ice on the street was a contributing cause of the accident. In its appeal complaining of the entry of judgment n. o. v. in favor of the Reading Company the city contends that the proof of the condition existing under the bridge was sufficient to make the bridge-owner liable in damages for the resulting accident. There was nothing to show that the dripping from the bridge was due to any neglect or carelessness in its operation or maintenance. The only fact which appears is that water dripped from the bridge, but this alone cannot affix a charge of negligence on the Reading Company. The city also contends that the presence and source of the water having been shown, the burden was on the Reading Company to disprove negligence in the bridge's operation and maintenance. This contention we overrule. This case presents no exception to the general rule that he who avers negligence must prove it. The presence of ice in the streets below the bridge on a February night and the fact that some water dripped from the bridge at that time of the year were not sufficient to support an inference against the Reading Company of negligence in maintaining its bridge. The entry of judgment in favor of the Reading Company was proper.

As to the appeal of the P. R. T. Company, it appears that the hole in the street which was found to be the primary cause of the accident, was caused by what is called a "working rail." The rail of the track had at that point become loosened from the steel ties upon which it was laid and it moved up and down when street cars ran over it. It was testified that the effect of a

"working rail's" attrition of the concrete substructure supporting the Belgian blocks in which the "runners" were imbedded, would be to permit these blocks to drop. There was evidence that this was exactly what had occurred. It was further testified that so long as this defective condition of the track existed, it was impossible to repair permanently the surface of the street, because the attrition consequent upon the moving of the rail was soon fatal to any repairs made. The P. R. T. Company contends that there was no specific testimony as to the existence of the "working rail" at a time prior to the time the hole was observed, and that there was not sufficient proof of its negligence with reference to the maintenance of its track at this point. We agree with the court below in its opinion, discharging the rule refusing judgment in favor of the P. R. T. Company, that there was evidence which would at least support the inference that the depression at the point of the accident was caused by failure on the part of the P. R. T. Company to properly construct and maintain its track structure. The court said: "The deficiency of construction manifested itself in a loose connection between the trolley rail and steel plates upon which the rail rested, this loose connection bringing about a 'working' of the rail, which in time caused a disintegration and expulsion of the cement support to the Belgian blocks immediately adjacent to the rail. It was the falling or sinking of two or more of such stone blocks that made the rut or depression in the highway."

The P. R. T. Company's principal contention in support of its motion for judgment n. o. v., however, is that it is now relieved from liability in this case by virtue of a contract entered into between it and the city in 1907, providing that the company should make certain payments to the city "which payments, when made shall be in lieu and satisfaction of all obligations and liability on the part of the company, and its subsidiary companies, for the paving, repaving and repair of the

streets occupied by their surface lines......Provided, however, that nothing herein contained shall relieve the company from the obligation to replace or repair pavement removed or damaged by any construction or repair work which the company may undertake with reference to its tracks or conduits." The company's position is that by the contract the city took over the obligation to do everything relating to the repair of streets, and that, therefore, no liability attaches to the company for failing to repair the hole that caused the accident. This argument overlooks the fact that the hole resulted from a defect in the track structure and the burden of properly maintaining the track structure rested upon it, i. e., the P. R. T. Company. In the absence of a contract providing otherwise, the company was bound to keep the surface of that portion of the street occupied by its tracks in good condition: Reading v. United Traction Co., 202 Pa. 571, 52 A. 106; Reading v. United Traction Co., 215 Pa. 250, 64 A. 446; Brobston v. Darby Boro., 290 Pa. 331, 138 A. 849. While the contract did relieve the company of its duty of caring for the paving, it did not relieve it of its obligation to maintain its tracks in good repair. The assumption by the city of an obligation to take care of all matters relating to the paving of the streets certainly cannot be construed to be an exemption of the company from its duty properly to maintain its tracks. The contract itself indicates that it was contemplated that the company should continue to maintain its tracks in good condition, for it provides that the company should not be relieved from the obligation to repair pavement damages resulting from the repairing of its tracks. The duty of taking proper care of its tracks at the point of the accident the jury found the P. R. T. Company had not performed, and that the existence of the hole which caused the accident resulted from this failure of performance. This breach of duty so found was held to be the proximate cause of the accident.

The company also contends that judgment should be entered in its favor on the ground that its liability, if any, is a joint one, whereas the writ of scire facias issued by the city alleges only that it is liable over to the city —that its liability is a primary one. It is argued that the hole in the street was caused jointly by the negligence of the city in failing to repair the street, and by its (the company's) own negligence in failing to maintain its track. This contention is without merit. The hole in the street having been caused by the defective condition of the track, it was impossible for the city to maintain the surface of the street as long as the track remained in the condition stated. The P. R. T. Company's negligence was the primary causal factor of the injuries plaintiff sustained, and this company is, therefore, responsible to the city for any liability fastened in the first instance on the city, by the jury's verdict.

The transit company has also assigned as error refusal of its motion for a new trial. An examination of the record convinces us that the case was accurately and ably tried and that no reversible error was committed. In the appeal of the P. R. T. Company the assignments of error are all overruled.

The judgments appealed from are affirmed.