McClintock *v.* Pittsburgh Railways Company, Appellant.

Argued October 8, 1952. Before Drew, C. J., Stern, Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

re-argument refused November 28, 1952.

*James A. Geltz,* with him *Prichard, Lawler, Malone & Geltz,* for appellant.

*James P. McArdle,* for appellee.

Opinion by Mr. Justice Allen M. Stearne, November 10, 1952:

Defendant has appealed from the refusal of the learned court below to grant its motions for judgment n.o.v. and for a new trial after a jury returned a verdict for plaintiff in the amount of $18,000. The action was in trespass for damages sustained by plaintiff when her automobile was struck by a street car driven by defendant's employe.

Defendant asserts that plaintiff was guilty of contributory negligence as matter of law and demands judgment n.o.v. In considering this point, it is fundamental that we must take the version of the testimony most favorable to plaintiff and ignore contrary inferences which the jury *might* have drawn from defendant's evidence: *Davis v. Feinstein,* 370 Pa. 449, 88 A. 2d 695. From the testimony of plaintiff and her wit-

nesses, the jury would have been justified in believing that the collision occurred in the following manner: about 6:30 p.m. on April 28, 1949, plaintiff was traveling east on Fifth Avenue in the city of Pittsburgh, intending to turn north on Dithridge Street and stop at Webster Hall Hotel. It was still daylight. Plaintiff stopped at the intersection, signaled for a left turn, and looked for traffic in all directions. She observed defendant's westbound street car situated beyond the entrance to the Cathedral of St. Paul at the corner of Craig and Fifth Avenue, which is two hundred sixty-two feet from the intersection at which plaintiff was turning. Plaintiff turned her car from its position astride the inside rail of the eastbound track and immediately noticed that pedestrians walking across Dithridge Street from the Cathedral toward Webster Hall were blocking her path. She proceeded across the westbound track at a very slow rate of speed in order to give the pedestrians time to pass. Plaintiff looked once again in the direction of the oncoming trolley car, saw it about sixty or seventy-five feet away, and almost immediately thereafter was struck by it. At the time of impact, the front wheels of her automobile had already passed the last car rail although the body of her automobile was still across the track.

Under these circumstances, it cannot be said that plaintiff was testing an obvious peril when she attempted the turn in the face of the approaching trolley car, even though the latter was traveling at a high rate of speed. It may well have appeared to a reasonable person that she had ample time to complete the turn before the street car traversed the distance of approximately three hundred feet that it had to travel before reaching the point where she was beginning her turn. This is far different from the cases relied on by defendant. For instance, where the testimony of the

plaintiff's own witnesses disclosed that her deceased husband had attempted to cross on a bicycle in front of a rapidly approaching street car which was only fifty to seventy-five feet distant, we held that defendant was entitled to binding instructions: *McCracken v. Consolidated Traction Company*, 201 Pa. 378, 50 A. 830.

A similar case is *Kilpatrick v. Philadelphia Rapid Transit Co.*, 290 Pa. 288, 138 A. 830: "He [plaintiff] proceeded, and before entering the tracks he again looked and saw the car moving rapidly, 75 feet away." The plaintiff in *A. & P. Tea Co. v. Phila. R. T. Co.*, 110 Pa. Superior Ct. 374, 168 A. 777, entered the track when a rapidly moving trolley car was only one hundred feet distant.

The instant case is more nearly akin to *Shannon v. Philadelphia Rapid Transit Company*, 115 Pa. Superior Ct. 494, 175 A. 720, in which it was said PER CURIAM: "In this case it certainly showed no carelessness on the part of the driver of the truck in starting across the street when the car was 300 feet away. Ordinarily, under such conditions, there was no question about there being ample time for him to get across before the trolley car would be at the intersection. The mere sight of a trolley car in the distance does not prevent the driver from attempting to cross if such distance would appear to afford the opportunity to the ordinary prudent person. . . . It was for the jury to decide as to whether he exercised the reasonable care required under the circumstances. There is no doubt, taking as we must, that his narration is true, the jury could find that there was ample time for the motorman to stop his car when he saw the plaintiff on the track, . . ."

We are likewise unable to accept appellant's argument that plaintiff was guilty of contributory negli-

gence as matter of law by reason of her failure to clear the tracks and *then* stop her car short of the pedestrians who were traversing her path. This contention is based on a computation from the physical layout of the intersection that there was room for plaintiff's automobile between the last street car track and the cross walk. It may be true that the action suggested would have been the wisest thing for plaintiff to do, but we do not believe that this Court should say that it was the *only* reasonable course for her to pursue. Such action would undoubtedly have increased the danger of striking a pedestrian, since it would have required plaintiff to increase speed until she was very close to the crosswalk. The exact position of the pedestrians relative to the trolley tracks on Fifth Avenue is not fixed by the testimony. It was for the jury to say whether it was unreasonable for her to expect the motorman of defendant's street car to observe her predicament and stop in time to avoid collision with the automobile in plain view across his line of travel.

The entire question of contributory negligence was one over which reasonable minds could differ, and therefore it was properly left to the jury: *Ashcraft v. C. G. Hussey and Company*, 359 Pa. 129, 58 A. 2d 170; *Hinton v. Pittsburgh Railways Company*, 359 Pa. 381, 59 A. 2d 151; *Dodson v. Philadelphia Transportation Company*, 366 Pa. 287, 77 A. 2d 383.

In support of its motion for new trial, defendant contends that the charge of the learned court below failed to instruct the jury adequately on the question of contributory negligence. This contention is without merit. Considered in its entirety, the charge was clear and impartial and fairly submitted the case to the jury to choose between the conflicting stories presented by the parties. The court concluded with these words: "However, if you find that both plaintiff and

defendant were guilty of negligence, then Mrs. Mc-Clintock would not be entitled to receive a money damage award at your hands." Immediately thereafter counsel for defendant said: "I have no exceptions except the refusal of the point." If any inadequacy in the charge on contributory negligence existed, it could certainly have been corrected by amplification at that time and will not be considered now. See *Rohland v. Nagy*, 369 Pa. 186, 85 A. 2d 88.

Appellant's final objection is to the refusal of the court below to withdraw a juror because of remarks made by counsel for plaintiff in his closing address to the jury about fare raises granted to defendant. We certainly do not condone such remarks, but neither did the trial judge. The only question to be decided now is whether the effect of the remarks was so prejudicial as to require a mistrial. The following comment on this situation appears in the opinion of the learned court below: "The speeches of counsel, of course, are not a part of the record, but it is our recollection that in the course of his talk to the jury counsel for plaintiff referred to the rising prices of commodities and mentioned that the defendant had recently raised its fares. Counsel for defendant immediately objected. The trial judge ordered plaintiff's counsel to cease this line of argument, and also instructed the jury to disregard the remark. It will be noted that no motion for the withdrawal of a juror was made at that time. It was not until the next day that the motion was presented and refused. We do not think the trial judge abused his discretion in this regard." It is well-settled that the discretion of the trial judge to decide whether a juror should be withdrawn is broad: *Bausewine v. Norristown Herald, Inc.*, 351 Pa. 634, 648, 41 A. 2d 736. We find no abuse of discretion here. It is significant that defense counsel did not consider the re-

mark sufficiently inflammatory to move for a continuance at the time the argument was made, but presented the motion as an afterthought the following day. Whatever harm resulted was cured by the trial judge's instruction to the jury to ignore the remark.

Judgment affirmed.