## Paustenbaugh, Appellant, v. Ward Baking Company.

Argued May 27, 1953. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

Appeal, No. 81,

*Louis Vaira,* with him *Esler W. Hays,* for appellant.

*Irwin M. Ringold,* for appellee.

Opinion by Mr. Justice Arnold, June 26, 1953:

In this action of trespass for damages for personal injuries and property damage, the jury rendered a verdict of $3000 for the plaintiff, and he appeals from the judgment entered thereon after refusal of his motion for a new trial.

The action arose out of a collision between plaintiff's automobile and defendant's truck on July 22, 1949.

Liability was admitted by the defendant, and the sole question before the jury was the amount of damages suffered and recoverable by plaintiff.

Plaintiff alleges as grounds for a new trial that: (1) the verdict was inadequate; (2) the court erred in refusing his motion for withdrawal of a juror and continuance, based upon remarks made by plaintiff's wife (who was also a witness for him) to three of the jurors; (3) he did not receive a fair and impartial trial; (4) defendant prejudiced plaintiff's case by improper questions asked of plaintiff and his witnesses on cross-examination.

(1) Plaintiff asserts that his proof showed damages, exclusive of pain and suffering, inconvenience, and loss of earning power, in the amount of $3232.55: consisting of hospital and medical expense ($1091.62), loss of car ($450.00), and loss of earnings ($1690.93). At the outset, it is to be noted that the record does not sustain his position in this regard. The payroll clerk of the plaintiff's employer did testify that he had lost wages of $1690.93, but it was not established that the days lost, except for some 57 days, were the result of the accident. In addition, he was in another accident in November, 1950, after which he was off work for 12 days. The loss-of-car item was his own estimate of depreciation resulting from the collision, based on his own estimates of its value before and after. The total repair bill was $109.70, and the total damage that can be said actually to have been established would be some $1,800.

The guide for determining whether a new trial should be granted for inadequacy of verdict has often been set forth in the cases. "Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a

gross abuse of discretion. . . When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise even greater caution in reviewing* its action. It was said by President Judge Rice in Palmer v. Leader Publishing Co., 7 Pa. Superior Ct. 594, 598: 'The power to grant a new trial because of the inadequacy, as well as the excessiveness, of the damages allowed by the jury is undisputed, but this power is much more rarely exercised in the former than in the latter case. If such caution is properly exercisable by the trial court, much more cautiously should an appellate court proceed where the trial court, after a conscientious review of the case, has refused to set aside the verdict. No mere difference of opinion, nothing short of a clear conviction, compelled by the evidence, that the jury must have been influenced by partiality, passion or prejudice or by some misconception of the law or the evidence, will justify an appellate court in declaring that the trial court was guilty of an abuse of discretion in refusing a new trial for inadequacy of damages where neither the evidence in the particular case nor the law applicable thereto furnished any definite standard by which they might be measured, and the jury had no other guide in arriving at the amount to be awarded but pure conjecture.' ": *Coleman v. Pittsburgh Coal Co.,* 158 Pa. Superior Ct. 81, 85, 43 A. 2d 540. "Indeed, it would seem that it is only where the verdict was *merely nominal* that the appellate courts have looked askance on a refusal of the trial court to set it aside and grant a new trial": *Carpenelli v. Scranton Bus Company,* 350 Pa. 184, 188, 38 A. 2d 44. (Italics supplied). "It is the province of the jury to appraise the worth of the testimony and to accept or reject the estimates given by witnesses. If the verdict bears a reasonable resemblance to damages which were proven, it is not the function of this Court to substitute its

judgment for that of the jury": *Perzak v. Coulter,* 171 Pa. Superior Ct. 475, 478, 90 A. 2d 256.

What was said in *Zamojc v. Fisher,* 127 Pa. Superior Ct. 171, 172, 193 A. 315, is particularly applicable here: "The verdict is small, having regard to the plaintiff's evidence as to his injuries and expenses in connection with them, but it is substantial and not merely nominal. . . The amount of the verdict was not enough to reimburse plaintiff for his time lost from work because of the accident, according to his testimony, and for his medical and hospital expenses, without any allowance for pain and suffering. But the jury might well have found that the doctor's bill was padded, and it was for them to decide whether the injury he received required his absence from work for eighteen weeks." The foregoing was quoted with approval in *Takac v. Bamford,* 370 Pa. 389, 88 A. 2d 86, where this Court affirmed plaintiff's judgment of $3000, although his testimony was that his injuries were severe and prevented him from working for 21 months at a job the average salary of which was $2600 yearly, and in addition showed other expenses. We there stated: "In the instant case, the court en banc in an opinion written by the learned trial judge, who saw and heard the plaintiff and his witnesses, both lay and medical, after a careful review of the evidence as to damages and the conflicts therein, concluded that it could not properly disturb the jury's finding. The grant or refusal of a new trial for inadequacy of the verdict is a matter for the sound discretion of the trial court whose action will not be reversed on appeal except for a clear abuse of discretion such as where a new trial is refused when the verdict is so unreasonably low as to present a clear case of injustice."

The court below declared in its opinion that the "record shows that plaintiff did not present a convinc-

ing case [as to damages]" and with that we agree. Plaintiff's own medical testimony disclosed conflict as to his condition, and defendant's testimony was that he was not as seriously injured as he claimed. There was no abuse of discretion.

(2) At recess during trial, when only she and three of the jurors were in a rest room, plaintiff's wife approached them and proceeded to tell them "how sick her husband was and she couldn't stand it much longer." In answer to the question of one of them she acknowledged that she was plaintiff's wife, whereupon the jurors went into the hall, followed by plaintiff's wife, who again attempted to talk to them. None of the jurors talked to her beyond what has been noted, but immediately reported the incident to the court. The trial judge, in chambers and in the presence of both counsel, ascertained the facts through his own questioning and that of plaintiff's counsel, determined that they would not be prejudiced, was told by the jurors that they would not be, and after cautioning the jurors to say nothing to the other jurors, refused plaintiff's motion for withdrawal of a juror and continuance. He then examined the plaintiff's wife alone, advised her that she "might very easily be guilty of a criminal offense," but that he did not believe she intended any wrong, and excused her with the admonition that she refrain from talking to the jurors.

Plaintiff offers no proof of prejudice other than the mere happening of the incident, and a review of the record does not disclose that any impression was made on the minds of the jury which was not overcome by the trial judge's instructions and examination of the parties involved. "It is well-settled that the discretion of the trial judge to decide whether a juror should be withdrawn is broad": *McClintock v. Pittsburgh Railways Company*, 371 Pa. 540, 545, 92 A. 2d 185. It de-

pends largely upon the atmosphere of the trial and the circumstances: *Padden v. Local No. 90 United Association of Journeymen Plumbers,* 168 Pa. Superior Ct. 611, 82 A. 2d 327.

(3) Plaintiff asserts that "the statement made by the trial judge in his opinion, . . . 'that the record shows that plaintiff did not present a convincing case' invites the discussion" that he did not receive a fair and impartial trial. We agree with the trial judge. This observation is frequently made, and respected by appellate courts: See *Takac v. Bamford,* 370 Pa. 389, 88 A. 2d 86. It is clear that the court was not referring to liability, but to the proof of damages, and the record reveals the basis for such statement.

Plaintiff further complains that upon his testifying to the value of his car before and after the accident, the trial judge cautioned the jury that "this man is giving his opinion," and again did so in his charge. But this is just what he should instruct, and he left the determination of amount to the jury. He also complains that the court instructed the jury that it could decide whether plaintiff lost any wages from the accident occurring in November, 1950. This was a part of the evidence, and certainly an element to be considered by the jury in its determination of what loss was sustained in the instant accident. There is no merit in the plaintiff's claim that the trial judge belittled the plaintiff's testimony, as is clear from the full and complete charge to which only a general exception was taken and upon which the plaintiff stated he had no suggestions to make when asked by the court.

(4) Plaintiff complains that, on cross-examination of plaintiff and his witnesses, information was elicited that his attorneys had sent him to a doctor (one of the medical witnesses) and a hospital where he was detained for some 19 days of the period he was

off work; that a Dr. Watson had noted in his hospital report that his condition was "not very bona fide." No objection was raised, and the witness added by way of minimizing its effect that the doctor also stated at the end that his condition was "carotid sinus syndrome". It may well be that plaintiff might have required the production of the doctor making the report. But not having done so,—particularly since the witness examined was the physician to whom plaintiff was referred, with whom the reporting doctor collaborated, and who had the information as his own,—we cannot let him stand by, take his chances on the verdict, and then reverse on such ground after he finds the verdict was not to his liking.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

From the moment that the wife of the plaintiff spoke to the three jurors outside the courtroom the cold neutrality of the trial disappeared in the flush of embarrassment and self-imposed vindication. The three jurors, being human, could not dismiss from their minds the fact that they had become involved, involuntarily or not, in a situation which could cast doubt upon their undeviating impartiality. How much were they resolved that they must not, by their verdict, show that they had been influenced by Mrs. Paustenbaugh? How far did the jurors lean back to prove this honorable intention? And when one leans back to ostentatiously demonstrate that he has not been improperly persuaded, is there not danger that the spine of fairness itself may crack?

These three jurors, in conjunction with their nine brothers and sisters, had but one duty to perform and that was to evaluate the plaintiff's losses, since the de-

fendant admitted that it was responsible for the accident which gave rise to the lawsuit. The plaintiff's medical expenses amounted to $1091.62. He lost wages in the sum of $1690.93, the damage to his automobile amounted to $450.00. Apart from pain and suffering, as well as impairment of earning power, the plaintiff's monetary loss up to the date of trial was $3232.55. For as long as this case will be recalled, the ghost of suspicion will hover over it that the untoward incident, which happened beyond the courtroom doors, caused the amputation of $232.55 from the established losses and the complete asphyxiation of the items of pain, suffering and inconvenience and impairment of earning power.

In the case of *Fitzgerald v. Penn Transit Co.*, 353 Pa. 43, the plaintiff proved a monetary loss of $1270, and the jury returned a verdict of $3000. This Court held that the verdict was inadequate: "Since the plaintiff was put to a loss of $1270 for expenses and wages, only $1730 was allowed him for pain, suffering, inconvenience and impairment of earning power, past, present and future, which we believe is not fair compensation. This is not a case in which plaintiff was negligent and a verdict could properly be rendered for defendants. Here the jury found the accident was caused by both defendants, not contributed to by plaintiff, and therefore from both, plaintiff should get adequate damages."

With what greater reason should a new trial be granted here where the amount of the verdict is *less* than the established expenses?

In *Todd v. Bercini*, 371 Pa. 605, we said that "When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then neglectfully, indifferently, or capriciously cut off a portion of that loaf as it hands it to the plaintiff."

The plaintiff in this case was denied a full loaf because of an argument in the bakeshop entirely beyond his control, cognizance or knowledge. A party litigant is entitled to an adjudication of his cause in a tribunal uninfluenced by extraneous matters. Thomas A. Paustenbaugh did not receive that kind of an adjudication.

In his opinion denying a new trial the learned Trial Judge stated that he had asked the involved jurors if they could ignore the incident which had occurred during the court recess. And he then explained that the questioned jurors "were unhesitatingly of the opinion that they could." The testimony of this interrogation reads as follows: "The Court: Ladies, the next problem is whether you feel you can dismiss this out of your mind and decide the case on the evidence you hear from the witness stand and the exhibits, and decide it fairly and justly, not only as to the plaintiff, but as to the defendant. Mrs. Howe: I could. Mrs. Barr: *I think I could too.* Mrs. Ritchie: *I think* I could too. Mr. Vaira: Q. Since she talked to you, would you feel her testimony would be colored in any way when she would go on the witness stand and testify to the same thing she stated to you? Would that affect you or would properly evaluate that testimony? A. *Oh, I think* I could."[1]

I do not find that these replies were so vigorously expressed that one could say their utterers were three pillars of strength unhesitatingly resolved that the incident which brought them before the scrutiny of the judge was now completely wiped out of their consciousness.

Nor is it entirely a matter of unhesitating conviction that the unfortunate episode occurred in the manner described by the juror who apparently spoke for

---

[1] Italics throughout, mine.

the three. Mrs. Paustenbaugh's version of the occurrence is somewhat different: "A. *They* wanted to know how—*two of them* [jurors] *wanted to know* how he was in here and I said how it was. Q. Did you make any statement to them as to your husband's health, the fact he wasn't well. A. Yes, I did say he wasn't well. Q. Of course, you might very easily be guilty of a criminal offense, in this matter. A. I didn't expect anything of it, you know, *they asked me*— Q. I am sure you didn't do it with any malicious intent, but it is a very serious matter. You have put your attorneys in a very embarrassing and difficult position in the trial. We are going to go on with the trial, however. A. You know what I mean, I didn't say anything to them for sympathy or anything, or mean anything about it. *They asked me* if I was in as a witness and I said I am Mr. Paustenbaugh's wife, that is all I stated."

I do not believe, (no matter which version is accepted as true,) that either the jurors on one side, or Mrs. Paustenbaugh on the other, intended to do anything wrong, and the Trial Judge was entirely justified in coming to that conclusion. But I am equally satisfied that the damage done by the contact between the jurors and the plaintiff's wife, no matter how innocently brought about, could not be undone, and the motion of the plaintiff's attorney for the declaration of a mistrial should have been granted. The trial was far from its termination, and although a continuance would have subjected witnesses to inconvenience, that trouble would not have been so costly to the cause of justice as a trial whose fairness is called into question.

In the case of *Gross v. Moore,* 166 Pa. Superior Ct. 575, the adjuster of an insurance carrier involved in the litigation spoke on a family matter with a juror who was his niece. In ordering the new trial which the

lower court had refused, the Superior Court said: "Although there may have been no actual fraud or gross misbehavior on the part of anyone in this case, on the facts set forth in the record and the additional facts admitted at the argument before this Court a new trial will be granted. In our opinion, a new trial is required to assure a fair and impartial trial in fact as well as in appearance, and to preserve the orderly administration of justice."

I firmly believe that this is a case where, in the words of the Superior Court, ". . . a new trial is required to assure a fair and impartial trial in fact as well as in appearance, and to preserve the orderly administration of justice."