Sculley *v.* Philadelphia, Appellant.

2

Argued January 13, 1955.   Before STERN, C. J., JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*James L. Stern,* Deputy City Solicitor, with him *Aaron W. White,* Assistant City Solicitor, *Abraham L. Freedman,* City Solicitor, *Raymond Kitty,* Assistant City Solicitor and *Jerome J. Shestack,* First Deputy City Solicitor, for appellant.

*Edward A. Collins, Jr.,* with him *James E. Riely,* and *Riely, Powell, Earle & Wetherill,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 14, 1955:
The plaintiff, Mary I. Scully, brought an action of trespass against the City of Philadelphia to recover damages for injuries sustained by her as the result of a fall allegedly due to a hole or depression in the surface of Lancaster Avenue. The defect in the street was between the rails of one of the trolley tracks of the Philadelphia Transportation Company, and the City brought in the Company as an additional defendant. A jury returned a verdict of $3,200 against both defendants. The Transportation Company filed a motion for judgment non obstante veredicto which was granted. The City filed a motion for new trial which it withdrew and a motion for n.o.v. which was refused, and this appeal is from the judgment entered on the verdict. The City does not question the entry of judgment n.o.v. in favor of the Transportation Company.

Lancaster Avenue runs approximately east and west, and is intersected by 52nd Street which runs generally north and south. Lansdowne Avenue runs from the southwest to the northeast into Lancaster Avenue where it ends about 75 feet west of where 52nd Street crosses Lancaster Avenue. This results in a large intersection area. There are street car tracks on Lansdowne Avenue which extend into Lancaster Avenue and then turn north on 52nd Street. The paved

area of Lancaster Avenue is 50 feet in width and that of 52nd Street, 60 feet. The Lansdowne Avenue cartway is 34 feet wide.

On May 28, 1949, a clear day, at about 1:30 P.M., plaintiff alighted from a street car which was proceeding northeast on Lansdowne Avenue, at the designated stop on the south side of Lancaster Avenue. There was a traffic signal at this corner and another on the other side of Lancaster Avenue which the plaintiff testified she was facing when she started across Lancaster Avenue after the traffic light had turned green. She stated that she looked where she was going but her attention was distracted by an automobile which was coming from Lansdowne Avenue and turning east on Lancaster Avenue. When the plaintiff reached a point between the rails of the Transportation Company's eastbound track, her heel caught in a hole or depression causing her to fall and suffer a broken hip. According to the testimony, the defect in the street was about two feet long, about two inches wide and from two to six inches deep.

The City first contends that it owed no duty to plaintiff because Lancaster Avenue where the plaintiff fell had been adopted as a State highway by Act of Assembly and the duty of maintenance and repair of the street surface devolved upon the Commonwealth.

Paragraphs 3 and 4 of the plaintiff's complaint in substance averred that the City had general supervision and control of streets within its corporate limits and therefore the duty of maintenance and repair of Lancaster Avenue. After the time for filing an answer had expired, the City petitioned for and obtained a rule to show cause why it should not be allowed to file an answer nunc pro tunc. In the proposed answer attached to the petition the City denied that Lancaster Avenue was under its care and on the contrary averred

that at the time of the accident the roadway was under the exclusive care, control and supervision of the Commonwealth. After argument before Judge McNEILLE, the rule was discharged. At the outset of the trial plaintiff offered in evidence paragraphs 3 and 4 of the complaint above referred to. Counsel for the City objected, calling the attention of Judge DAVIS, the trial judge, to the City's contention, as stated in its petition and proposed answer, that the Commonwealth and not the City under named Acts of Assembly had the duty of maintenance and repair of the street. Judge DAVIS being of opinion that he was bound by Judge Mc-NEILLE's discharge of the City's rule, admitted the paragraphs of the complaint into evidence.

The City argues that the averments of these paragraphs charging the City with the duty to repair the street constitute a conclusion of law that really required no answer and that in any event the trial judge was required to take judicial notice of the public statutes alleged to place such duty of care upon the Commonwealth. The court below in answering this contention held that the City could not cure the "deficiency" in its pleading by the "technique" of judicial notice; that a statutory defense must be specifically pleaded under the local rule of the Philadelphia Common Pleas Court known as Pa. R. C. P. 1019*(i) which provides: "Whenever any right, claim or defense is asserted to be founded upon a specific statute of this or another jurisdiction or upon an ordinance, governmental regulation or rule of court, the first pleading in which such right, claim or defense is asserted shall cite, for the information of the court, the statute, ordinance, regulation or rule so relied upon.". The City claims that the purpose of this local rule is merely to inform the court of the statute or statutes relied on in support of its asserted defense, and here

the court was fully apprised of the statutory law relied on.

In support of the lower court's conclusion that it could not take judicial notice of the statutes invoked, plaintiff's counsel also points to Pa. R. C. P. 1045(b) which provides that by failing to file an answer a defendant admits the ". . . control of the property or instrumentality involved . . .". The City replies, as above stated, that the averments of paragraphs 3 and 4 of the complaint are conclusions of law which it was not required to answer.

We deem it unnecessary to answer the questions thus posed for even if they were resolved in appellant's favor and judicial notice taken of the statutes relied upon by it, they did not in our opinion relieve the City of the duty to maintain the surface of Lancaster Avenue where the accident occurred.

The road-bed of Lancaster Avenue (and of certain other streets in Philadelphia) was adopted as a State highway by the Commonwealth of Pennsylvania by the Act of May 7, 1937, P. L. 589, as amended by the Act of July 10, 1941, P. L. 345, and the Act of June 1, 1945, P. L. 1242, 36 PS §961-1 et seq., §670-101. Section 5 of the Act of May 7, 1937 expressly excluded the portions of the streets which are or may be used and occupied by the structures or surface facilities of any public utility company. This exclusion was deleted in the amendatory Act of July 10, 1941 and therefore the City contends the entire roadway of the streets was placed under the jurisdiction and authority of the State Highway Department with the concomitant duty of maintenance and repair. However, certain limitations on the powers and obligations of the Commonwealth are set forth in Section 3 of the 1937 Act as amended by the 1941 Act, which section has never been repealed. For present purposes only one of these limi-

tations need be considered. Section 3(c) provides that "No city street, or part thereof, described in section two of this act, shall be taken over if an agreement has been entered into between the city authorities and the Commonwealth or any other party for the *maintenance* or construction of such street even though no formal contract has been executed pursuant to such agreement and no work has been done, until the terms of the agreement have been fulfilled.". (Emphasis supplied).

At the trial of the instant case there was introduced into evidence a written agreement entered into between the City and the Philadelphia Rapid Transit Company, predecessor of the additional defendant, dated July 1, 1907, under which the City for a stipulated annual consideration obligated itself to pave and repair those parts of the streets occupied by a traction company's surface line with the exception that the transportation company was still required ". . . to replace or repair pavement removed or damaged by any construction or repair work which the company may undertake with reference to its tracks or conduits.".

In *Yoder v. Philadelphia et al.*, 315 Pa. 586, 173 A. 275, this contract was interpreted as relieving the company of its common law duty of caring for the paving of its right-of-way,[1] but under the exception in the agreement the company was still bound to maintain its *tracks* in good condition. In that case there was evidence that the hole in the street resulted from a defect in the *track structure*, more specifically a loose connec-

---

[1] " 'It is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right-of-way in good condition, even in the absence of any express contract or statutory direction to that effect': . . .": *Culver et al. v. Lehigh Valley Transit Company et al.*, 322 Pa. 503, 507; *Illingworth v. Pittsburgh Railways Company*, 331 Pa. 369.

8

tion between the trolley rail and the steel plates upon which the rail rested. Here the City, although clearly cognizant of the exception, and with ample opportunity to present evidence, if it existed, bringing it within the exception, introduced no testimony whatever as to a faulty construction or maintenance of the additional defendant's track structure on Lancaster Avenue. Since the agreement between the City and the traction company was still in force at the time of the occurrence in question and the City introduced no evidence that would bring it within the exception provision of that agreement, as between the defendant and the additional defendant the duty to repair the paving was on the City. And inasmuch as the statute in question expressly exempts the Commonwealth where the municipality has entered into an agreement with a third party, as it has here, the City alone remained liable for the repair and maintenance of the portion of the cartway lying between the rails.

We do not agree with the City's assertion that the limitation of the State's obligation contained in Section 3(c) of the Act of 1937, as amended, contemplates only an agreement between the City and a third party whereby the latter undertakes the necessary maintenance and repair of the street or part thereof. If such were the legislative intention, it could have easily so provided. The exemption from obligation by the Commonwealth is not limited by the language employed to an agreement under which a third party undertakes the maintenance and repair but covers any agreement or arrangement between the City and a third party under which, in relief of the Commonwealth, maintenance and repair is assumed by one or the other of the parties to the agreement. To limit the meaning of the exemption as appellant urges, would lead to the unconscionable result that the Commonwealth would be

required to make the expenditure necessary to maintain and repair the paving within the trolley track area on all State highways located within the City, while the City receives from the utility and retains the amount required to cover the very work performed and paid for by the Commonwealth.[2] If it be assumed that the section of the Act in question permits of two different interpretations, then a construction that would produce such a result must be rejected. As stated by Judge (now Justice) ARNOLD in *Duddy v. Conshohocken Printing Company,* 163 Pa. Superior Ct. 150, 155, 60 A. 2d 394: "Where a statute is fairly susceptible of two different constructions the court may properly consider the injustice, unreasonableness and inconvenience that would follow one of the constructions contended for: . . .". See also *Toffalori v. Donatelli Granite Co. et al.,* 157 Pa. Superior Ct. 311, 43 A. 2d 584.

The second contention advanced by the appellant is that the plaintiff was guilty of contributory negligence as a matter of law (1) in failing to observe an obvious defect and (2) in electing to cross the street at a point other than the established pedestrian crossing.

It has been well settled that where an accident occurs in broad daylight by reason of a defect in a sidewalk or street which is plainly visible, it is incumbent upon the party complaining to show conditions external to himself which prevented him from seeing the defect, or which excuse his failure to observe. Where such conditions prevail, there is then an excuse for walking by faith: *McDonald v. Mars Borough,* 371 Pa. 625, 628, 92 A. 2d 199; *Cox v. Scarazzo,* 353 Pa. 15, 17, 44 A. 2d

---

[2] The record reveals that in 1949, the year in which the accident happened, the Transportation Company was obliged to pay the City the sum of $650,000 under the terms of the agreement between them.

294; *Tauber v. Wilkinsburg*, 309 Pa. 331, 334, 163 A. 675. The plaintiff testified that after she started across Lancaster Avenue with the green light in her favor, her attention was distracted by a vehicle on her left turning from Lansdowne Avenue into Lancaster Avenue. A sign marked "RIGHT TURN—KEEP MOVING", controlling vehicles approaching Lancaster Avenue from Lansdowne Avenue was located a short distance from the intersection and such vehicles were not required to stop before turning right into Lancaster Avenue. The present case closely parallels those cases in which the plaintiff was not afforded an opportunity for a leisurely observation of the path she was taking. See *Hardiman v. Pittsburgh Railways Company*, 339 Pa. 79, 14 A. 2d 72; *Emmey v. Stanley Company of America*, 139 Pa. Superior Ct. 69, 10 A. 2d 795; *Becker v. Philadelphia*, 212 Pa. 379, 61 A. 942. A pedestrian is not required to keep his vision fixed continually on the ground immediately in front of him to discover possible points of danger, especially where his attention must also be directed toward the imminent peril of an approaching vehicle: *Lerner v. City of Philadelphia*, 221 Pa. 294, 70 A. 755; *Williams v. Kozlowski et ux. (et al.)*, 313 Pa. 219, 225, 169 A. 148. In traversing a cartway, the law imposes a dual duty on the pedestrian of exercising care to avoid obvious defects in his path and of observing the movement of advancing vehicles. The evidence discloses that plaintiff discharged her duty, for she not only was mindful of traffic conditions but testified also that she did watch where she was going in this instance. The cases relied upon by appellant are distinguishable on their facts. In *Reed v. Philadelphia et al.*, 311 Pa. 283, 166 A. 891, and the kindred case of *White v. Harrisburg*, 342 Pa. 556, 20 A. 2d 751, there was no approaching vehicle and the plaintiff in each case admittedly never looked downward after com-

mitting herself to the cartway but was observing traffic only. In the instant case plaintiff's negligence, if any, was not so clear and unmistakable that the court could declare it as a matter of law. Contributory negligence can only be treated as a question of law when it is so clearly revealed that fair and reasonable persons cannot differ in their conclusions as to its existence: *McClintock v. Pittsburgh Railways Company,* 371 Pa. 540, 92 A. 2d 185; *Dodson v. Philadelphia Transportation Company,* 366 Pa. 287, 291, 77 A. 2d 383.

Nor can it be said that the plaintiff assumed the risk of any defect by failing to use an established crossing. According to the evidence there were two established crossings as shown on a chart prepared by the City's Bureau of Traffic Engineers, the one located approximately 50 feet west and the other 100 feet east of the point where plaintiff fell. However, there was testimony by a witness for the City, an inspector of the City's Bureau of Highways, from which the jury could find that the painted lines marking these "established" crosswalks had become "worn out" by passing traffic and at the time of the accident were so obliterated as not to be evident to the plaintiff. The plaintiff testified that she was unfamiliar with the intersection which, consisting of three converging streets, was a complex one. At the point where she proposed to cross there were no signs directing pedestrians to the crosswalks or cautioning against proceeding as she did. Of course, in the absence of any such directions or visible markings of the established crossings, the plaintiff was bound to exercise prudence in crossing the street. But under the circumstances we deem inapplicable the rule invoked by the defendant that where a person having a choice of two ways, one of which is safe and the other subject to risks, voluntarily chooses the latter and is injured, he is thereby barred from recovery by

his negligence. The rule requires as one of the conditions of its applicability the existence of two distinct ways—one clearly recognizable as safe and the other as involving danger: *Perry, Administrator et al. v. Pittsburgh Railways Company,* 357 Pa. 608, 614, 55 A. 2d 354; *Brown v. Beaver Valley Motor Coach Company et al.,* 365 Pa. 578, 581, 76 A. 2d 403. In order to use the crosswalk to the west, plaintiff would have had to first walk across Lansdowne Avenue for which no crosswalk was provided; then an additional 75 feet to reach the north side of Lancaster Avenue, her intended destination. Use of the crosswalk to the east would have necessitated her travelling about 75 feet east on Lancaster Avenue to the corner of 52nd Street and then 100 feet north on the crosswalk, and in so doing she would have been subjected to traffic from several directions. The course actually taken by the plaintiff was the shortest and most direct route to the north side of Lancaster Avenue, and although not marked by lines, it had the appearance of an established crossing in that it was at an intersection and between traffic signals. For all that appears, the alternative routes were not only less convenient but fraught with more risks than the route actually taken. Consequently the instant case is governed by the principle first enunciated by this Court in *Samuel S. Mellor v. The Burgess and Town Council of Bridgeport,* 191 Pa. 562, 43 A. 365, and recently reaffirmed in *Scurco v. Kart,* 377 Pa. 435, 439, 105 A. 2d 170, where it was said: ". . . Under such circumstances the rule is that, if the alternative route has dangers of its own and the dangers of the route actually taken are not so great and obvious as to deter ordinarily prudent and careful people from using it, the question of contributory negligence is for the jury: . . .". Considering the evidence in the light most favorable to the plaintiff as we are obliged to do, we are sat-

isfied that she could not have been declared guilty of contributory negligence as a matter of law.

Judgment affirmed.