## Vuynovich v. Midland Borough

*Holt & Holt*, for plaintiffs.

*Suffoletta & Masters*, and *Wallover, Barrickman & Scalera*, for defendant.

McCreary, P. J., June 20, 1961.—This is an action in trespass brought by Daisy Vuynovich and Joseph Vuynovich against the Borough of Midland to recover damages as a result of an accident which occured on June 14, 1959. In the first count of plaintiff's complaint, Daisy Vuynovich sought damages for her injury. In the second count of plaintiffs' complaint, Joseph Vuynovich sought damages as compensation for the expenses he incurred as a result of his wife's injuries.

Daisy Vuynovich recovered the sum of $1,000 and Joseph Vuynovich was awarded the sum of $758.50,

which was the total sum of expenses proven at the trial.

Plaintiffs filed a motion for a new trial on the ground that the verdict was inadequate, but withdrew the motion on argument day.

Defendant filed a motion for judgment n. o. v., which motion is now before the court for determination.

In the legal situation which necessarily obtains under procedural circumstances such as here present, we are required to accept as true all facts and all inferences reasonably deducible therefrom which are favorable to the verdict, having resolved to the same end any conflicts of material fact raised by the evidence of the party opposed to the verdict. See Delair v. McAdoo, 324 Pa. 392, 396, and cases there cited—Cf. also Scerca v. Philadelphia Transportation Company, 352 Pa. 152, 154. So viewing the evidence in this case, the presently pertinent facts are as follows:

On June 14, 1959, at approximately 1 p.m., plaintiff, Daisy Vuynovich, was a participant in a procession of the Serbian Orthodox Church located at the corner of Beaver Avenue and Tenth Street in the Borough of Midland, Pa. The procession formed on the paved sidewalk area in front of the church and moved slowly in a counter-clockwise direction around the church property. When the procession reached Beaver Avenue its members walked in the cartway of the street. Mrs. Vuynovich was in the fourth row of the choir in the procession; there were four people in a row, and plaintiff was the second person in from the right. There was a distance of one and one-half feet between rows. From the time the procession started to move, plaintiff regularly looked down to see that the pavement was clear. As the procession was moving along Beaver Avenue, Mrs. Vuynovich stepped into a hole in the cartway, fell and was injured. She did not

know that the hole was there. Mrs. Vuynovich was singing from memory as she walked with the procession. The hole was described by Alexander Vranes, a witness, as being approximately two to three inches in depth and about three feet in diameter. Miss Novak, another witness, described the hole as being five or six inches deep and about 18 inches in diameter.

Witness for defendant, Richard Steebner, Borough Engineer for the Borough of Midland, testified that the ditch had been dug in the street for the purpose of putting in a water line and sewer line. He stated that the ditch had been refilled, that the filling had been tamped every 12 or 15 inches with a tool, and that ashes had been put on top of it. He testified that after the first leveling of the fill, the street foreman was ordered to keep the ditch filled with ashes and inspected regularly. Mr. Steebner testified that the break in the pavement would be four and one-half to five inches wide. He testified that it is impossible to repave the street immediately, but that the proper practice is to permit the fill to settle in the ditch before the pavement is replaced. There are sidewalks on both sides of Beaver Avenue, which sidewalks were in excellent condition.

Matthew Brozic, Street Foreman for the Borough of Midland, testified that he inspected the ditch on Friday, June 12, 1959, and that it was made level with the surrounding paved surface; that on Monday morning, June 15th, the day after the accident, he inspected the ditch again and that the surface of the ditch varied in depth from one inch to one and one-half inches in spots.

Mrs. Vuynovich was injured as a result of the fall; her injuries were to her right knee and left shoulder, and she had not completely recovered at the time of the trial.

Defendant argues two propositions in support of its motion for judgment n. o. v. First, it insists that on the face of the record the wife plaintiff was guilty of contributory negligence as a matter of law and that the trial judge should have so declared. Secondly, it insists that there is nothing in the record on the basis of which the jury could conclude that there was any negligence on the part of defendant borough, and that the trial judge should have so declared to the jury by approving defendant's point for binding instructions.

We disagree with both propositions. Contributory negligence should be judicially declared as a matter of law only where it is so clear that there is no room for fair-minded and reasonable persons to disagree: Van Note v. Philadelphia Transportation Company, 353 Pa. 277. The question of the wife plaintiff's contributory negligence was submitted to the jury under instructions as to which there was no objection by defendant. The trial judge charged the jury as follows:

"Of course, there is a third factor to be considered in all of these cases, and rather important too for the consideration of the Jury; and that is the question as to whether the plaintiff herself was guilty of contributory negligence. Now, having defined negligence, it is scarcely necessary for me to tell you what we mean by contributory negligence. It is conduct on the part of the person seeking to recover damages which falls below the standard to which she should conform for her own protection, and which is a legally contributing cause, cooperating with the negligence of the defendant, the Borough of Midland, in bringing about her own harm. If she herself was contributorily negligent, and that negligence on her part contributed in the slightest to the happening of the accident, she cannot recover anything, and neither can her husband.

"It has also been suggested to you in argument by

counsel for both sides that failure to anticipate negligence which results in injury is not negligence, and will not defeat an action for the injury sustained. The defendant complains that the Borough of Midland was not bound to anticipate that the plaintiff, Mrs. Vuynovich, would come along in a procession and not see the depression; which they say would have been caused by the ground in the hole settling even after cinders had been put on it; that when automobiles would travel over it they would leave depressions or holes in the hole. On the other hand, the plaintiff takes the position that she was not bound to anticipate, when she was marching along that street in that procession, that the Borough of Midland would fall short of its duty in keeping those streets in proper passable condition either for motor vehicles or for pedestrians lawfully using the street. And counsel for the plaintiffs and counsel for the defendant are right; failure to anticipate negligence or contributory negligence is not negligence.

"Now, if there is an obvious defect in a street, a person walking along a sidewalk or down in the cartway of the street has to walk with his or her eyes open, and has to look where he or she is walking. It is well settled that where an accident occurs in broad daylight—and it was broad daylight in this case—by reason of a defect in the sidewalk or street, which is plainly visible, it is incumbent upon the party complaining to show conditions external to herself which prevented her from seeing the defect, or which excuses her failure to observe it. Where such conditions prevail there is then, and only then, an excuse for walking by faith. Defects in curbs, sidewalks and cartways are so common that it is the duty of a pedestrian to be observant; and the mere fact that others are on the sidewalk or in the street, does not absolve one from

the penalties of contributory negligence for failure to observe what could have been seen by the exercise of ordinary care.

"Now, in this case the plaintiff takes the position that there was something external to herself which prevented her from seeing the defect, and which excuses her failure to see or observe the different defects in this street. She says she was a member of the Serbian Church, and she belonged to the church choir, and that it is a tradition with the Serbian Orthodox Church, on certain festive occasions, to have processions; that the choir, the Priest and the Bishop, and flower girls and members of the congregation march in a counter-clockwise procession around the church—it has some significance to it; and that in order that the choir may render their best possible airs they must walk in close formation; she says that they were in columns of four, four abreast, each row being about a foot or foot and a-half behind the other row, and that there were about thirty-five or thirty-six in the choir that marched in such formation; and that in walking along the street she says she performed her duty, she did look down every once in a while to see that the street was still smooth, that she looked left and right to keep the formation in proper shape, and then she would look forward to see that she wasn't getting too far behind or too close to the row in front of her; and that having looked down, when it came her turn to look up and observe otherwise, that is when she said she came in contact with this hole; and that she says comes within the rule which requires her to show, that if this was as plainly visible as is contended, there were conditions external to herself which prevented her from seeing the defect, or which excuse her failure to observe it; and she says, as I have just recited, those are the conditions which caused her not

to see the hole at the particular time when she stepped into it, or stopped on its edge. It is like when you have been to football games or baseball games, and you are coming out of Forbes Field, or any other field, the people always seem to be in a hurry to get out from the game after it is over, and they come out in close formation, shoulder to shoulder, and some people stepping on your toes; and if you were to step in a hole in the sidewalk or cartway, that would be a condition external to yourself which might excuse you from not seeing an obvious defect in the street . . .

"Of course, it is the general duty of a citizen using the streets to keep his eyes open, not to walk by faith alone, and to observe what is in front of him; and it is excused, if he doesn't see an obvious defect, as I said before, only by conditions outside himself which tend to excuse him or her from not seeing the obvious defect in the street. One cannot be heard to say that he looked but failed to see that which was actually and obviously present, and which could have been seen in the exercise of reasonable care and prudence. It is vain for one to say that he looked, if, in spite of what his eyes must have told him, he, or she, walked directly into a hole. A person is bound to see that which must have been plainly visible at the time it became his or her duty to look. And in this case you may find as a fact that there were conditions outside the pedestrian herself which excused her from not seeing the obvious defect.

"If this plaintiff were walking up that street, or across that street on that particular day all by herself, with no conditions outside herself to impede her ability to see the hole, you would not have to decide this case, as the Court would have to take it away from you as a matter of law, as she would then be guilty of contributory negligence as a matter of law for stepping into

an obvious defect or hole in the street. You don't have that situation here; you have the plaintiff in a procession, where she had a lawful right to be; and now you have to determine whether she was guilty of conduct on her part which falls below the standard to which she should have conformed for her own protection."

Excerpts from this charge are consistent with the appellate court decisions on the subject, under similar facts, in the following cases: Sculley v. Philadelphia, 381 Pa. 1; Bozarth, et vir, v. Penn Fruit Co., 187 Pa. Superior Ct. 217.

The question of defendant's negligence was also properly submitted to the jury by the trial judge in language as follows:

"Now, what is the standard of care of a municipality, a borough such as the defendant Borough of Midland, that should be observed as to people who rightfully use the borough facilities such as sidewalks, cartways and floors. The standard to which a municipality is held for maintenance of its streets and sidewalks is one of reasonable safety; and negligence may be inferred from the extent of a substantial highway defect or any considerable period of time.

"In this case the borough engineer said that this ditch had been dug about six months before, and had been back-filled, that every twelve inches of the back-fill was tamped with an air-compressor, and they keep on tamping until they get near the top, and then put cinders in; and that as the cinders are gouged out by vehicle traffic more cinders are put on to keep the street level; he said that is the only thing that can be done; that they can't put the blacktop right back over that filled hole, because on account of the clay condition it has a natural tendency to sink, and as it sinks they have to keep putting more ashes on it, and as it gets gouged out they continue putting more ashes on it.

Now, did the Borough of Midland comply with the standard that is required of them in the maintenance of Beaver Avenue, in the Borough of Midland. That is a question for you to determine from a consideration of all the testimony in the case."

This language is consistent with the language of the Supreme Court of Pennsylvania in the case of Caleodis v. Monessen, 377 Pa. 511.

Defendant contends that the wife plaintiff was contributorily negligent in marching in a procession in the cartway of Beaver Avenue instead of using the sidewalk. We disagree. Again, the trial judge correctly pronounced the law on this phase of the case when he charged the jury as follows:

"The cartway is primarily for the use of motor vehicles, but it is also for the use of pedestrians. Pedestrians have the right to cross a street at any place they choose; and when I say 'street', I mean cartway; so that the cartway of a street is for the benefit of both vehicles and pedestrians. But when a person crosses between crossings it is the motor vehicle that has the right-of-way over the pedestrian; and the pedestrian has to exercise a higher degree of care for his own protection while using the cartway, and make observations for depressions, or holes, that may be in the cartway, than he is obliged to exercise when using a sidewalk."

We conclude that the facts in this case were peculiarly for the jury to decide and that the verdict is amply supported by the record. To have taken the case from the jury by affirming defendant's point for binding instructions would have constituted trial error.

Defendant's motion for judgment n. o. v. must be overruled.

Entertaining these views, we make the following

## Order

Now, June 20, 1961, after argument before the court enbanc, it is ordered that defendant's motion for judgment n. o. v. be and the same is overruled, and it is further ordered that judgment be entered on the verdict upon payment of the jury fee.