## Pro *v.* Pennsylvania Railroad Company, Appellant.

438

Argued October 9, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Bruce R. Martin,* with him *Pringle, Bredin & Martin,* for appellant.

*Marvin D. Power,* with him *Suto, Power, Goldstein & Walsh,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 11, 1957:

Plaintiffs, Marie Pro and her husband, Frank Pro, instituted a trespass action against the defendant, the Pennsylvania Railroad Company, to recover damages for injuries sustained by the wife-plaintiff when she fell while walking across a railroad crossing over defendant's right of way. The action was tried before a judge and jury and resulted in verdicts for the wife-plaintiff in the amount of $25,000 and for the husband-plaintiff in the amount of $5,000. The court below refused to grant defendant's motions for judgment n.o.v. and for a new trial. Judgments were entered on the verdicts and these appeals ensued.

The accident occurred on February 19, 1954, a clear day, at approximately 1:30 P.M. At that time the wife-plaintiff was walking to her place of employment in the Corning Glass Company plant located in Charleroi, Pennsylvania. In order to reach this plant it is necessary for all of the Corning Glass employees, whether afoot or in vehicles, to cross defendant's railroad crossing which leads from 8th Street, a public highway in the Borough of Charleroi, into the plant. The testimony was uncontradicted that this was the *only* approach used by the employees to enter the plant. The crossing was paved and was wide enough for two cars to pass abreast upon it. The wife-plaintiff was in the act of traversing this crossing—she had reached a point about halfway across it—when her right foot became caught in a hole, causing her to fall and suffer very severe injuries. She testified that while she was in the act of taking her last step—the one which caused the fall—she heard the sound of an automobile behind her, turned to look in that direction, and stepped into the hole while her attention was thus distracted.

Upon this appeal defendant maintains that it is entitled to judgment n.o.v. on the grounds that (1) the wife-plaintiff was contributorily negligent as a matter of law, and (2) that there was no proof of any duty of maintenance of the crossing on the part of the defendant. In addition, defendant contends that the court below erred in instructing the jury that the crossing was public and that defendant had the duty to maintain it. Defendant argues that this was a question of fact for the jury under the testimony and that the court usurped the jury's function in this regard, thus requiring that a new trial be granted.

The wife-plaintiff testified that she had carefully proceeded across the crossing up to the point where she fell, that she was fully aware of the very poor condition of the roadway and the great need for care, and that she was simultaneously keeping a sharp lookout for trains approaching the crossing. It was while she was thus busily engaged that the sequence of events heretofore recited occurred and caused her to fall. The hole into which she stepped was large and clearly visible and, by her own admission, she would have seen it had she not turned her head to look behind her while taking her last step. Unquestionably, absent the sound of the automobile, the wife-plaintiff would have been clearly guilty of contributory negligence as a matter of law. The law is clear that where a party walks into an obvious, clearly visible defect in his path in broad daylight he must shoulder the burden of proof of conditions outside himself which prevented him from seeing the defect or excuse his failure to observe it: *Cox v. Scarazzo*, 353 Pa. 15, 17, 44 A. 2d 294; *Leson v. Pittsburgh*, 353 Pa. 207, 210, 44 A. 2d 577; *Sculley v. Philadelphia*, 381 Pa. 1, 9, 112 A. 2d 321. It is obvious that where such conditions do exist the party then has an excuse for walking by faith.

The wife-plaintiff was firm in her assertion that she had used great care in proceeding over the crossing. In her situation she was under a duty not only to exercise care to avoid obvious defects in her path, but also to remain on the lookout for approaching vehicles; she was not required to focus her attention *exclusively* on the pavement immediately in front of her to discover possible defects therein: *Lerner v. City of Philadelphia,* 221 Pa. 294, 70 A. 755; *Williams v. Kozlowski et ux. (et al.),* 313 Pa. 219, 225, 169 A. 148; *Sculley v. Philadelphia,* supra, p. 10. The wife-plaintiff knew that the shifts were changing at the Corning Glass Company plant and she had every reason to anticipate that automobiles might enter the crossing from either direction at any time. She was also aware of the need for a lookout against trains approaching the crossing. In view of these factors, and considering the fact that she was 59 years old at the time and consequently neither as sure-footed nor as immune to panic as a younger pedestrian might be, we are not able to hold that her negligence, if any existed, was so clear that the lower court could properly declare it as a matter of law. This Court has frequently held that contributory negligence may be judicially determined only where it is so clear and unmistakable that there is no room for fair and reasonable persons to disagree as to its existence: *Sculley v. Philadelphia,* supra, p. 11; *McClintock v. Pittsburgh Railways Company,* 371 Pa. 540, 544, 92 A. 2d 185; *Carden v. Philadelphia Transportation Company,* 351 Pa. 407, 409, 41 A. 2d 667.

Defendant has cited numerous cases in which the plaintiffs were declared contributorily negligent as a matter of law because of their failure to see and avoid obvious depressions in their paths. In all those cases the plaintiffs either gave no reason or gave insufficient reasons to excuse their failure to see the defects. Since

the wife-plaintiff in the instant case won a verdict in the court below, under well settled principles, in considering that court's refusal to grant a motion for judgment n.o.v. we must read the testimony in the light most favorable to her, resolving all conflicts in her favor and giving her the benefit of any facts or inferences from facts which we can reasonably deduce from the evidence: *Kuhns et al. v. Brugger et al.*, 390 Pa. 331, 135 A. 2d 395; *Wolansky v. Lawson*, 389 Pa. 477, 481, 133 A. 2d 843; *Wilbert v. Pittsburgh Consolidated Coal Co.*, 385 Pa. 149, 154, 122 A. 2d 406. Reading her testimony in this light we are unable to say that as a matter of law it was not sufficient to excuse her failure to see and avoid the hole in defendant's crossing. It follows that the court below committed no error in allowing the jury to decide the question of her contributory negligence and we see no reason to interfere with the jury's resolution of the issue in the wife-plaintiff's favor.

Defendant's second ground for argument that it is entitled to judgment n.o.v. (to which we apply the same principle upon review), i.e. that plaintiffs failed to prove the breach of any duty owed by defendant to maintain this crossing in safe condition for pedestrian use, is equally untenable. The record in this case is replete with evidence that defendant had permitted this crossing to remain in existence for many years and that defendant had maintained it exclusively for the benefit of the public in general and the employees of the Corning Glass Company in particular. The Street Commissioner of the Borough of Charleroi testified that his community had taken no part in the maintenance of the crossing.

Defendant admitted in the pleadings—by reason of its failure to file an answer and the subsequent reading of this particular portion of the pleadings into evi-

dence—that it "owned, operated, maintained and controlled" this crossing. Defendant stated, in answer to plaintiffs' interrogatory, that it had last repaired the crossing on July 26, 1953—approximately seven months prior to the accident. Testimony disclosed that defendant had applied black top to the crossing area, clearly showing that the crossing was being maintained for use by the public since the area improved by the black top would not benefit rail traffic in any way. Testimony by a witness who was employed in a supervisory capacity by the Corning Glass Company disclosed that it was his practice to notify the defendant's Charleroi agent when the crossing was in need of repair. Further testimony, in addition to that which disclosed that the crossing was the only method used by the Corning Glass Company employees in entering and leaving the plant, established that the crossing had long been used by the public in general, after business hours, to reach a public parking lot and for other purposes.

Defendant neither offered evidence nor produced witnesses to contradict this evidence. It is clear that the defendant not only permitted the public's continued use of its crossing after it had notice of that use, but went far beyond this and actually improved and repaired that crossing periodically for their benefit. It is obvious that more than a mere permissive crossing —i.e. an express or implied license to pass over the railroad's right of way which makes the railroad subject to a duty of care to the public comparable to that required of it at public crossings—was permitted to exist here. Cf: *Henry v. Pennsylvania Railroad Company*, 368 Pa. 596, 84 A. 2d 675; *Hamley et al. v. Pittsburgh Railways Company*, 365 Pa. 543, 76 A. 2d 181; *Figard v. Pennsylvania Railroad Company*, 361 Pa. 380, 65 A. 2d 411. The permissive crossing cases involve the duty of the railroad, where such license ex-

ists, to exercise care when operating its trains over such crossings to avoid striking people using the crossing. Those cases do not involve crossings actually maintained and repaired by the railroad for the public. While there does not appear to be any clear authority directly on this point we are of the opinion that in circumstances such as those presented by this case, regardless of whether the crossing is considered a private or a public one, the railroad, having undertaken to maintain the crossing in good repair, is under a duty to keep it reasonably safe for use by the public. The question of whether or not defendant breached this duty in the instant case was properly submitted to the jury for determination.

The situation in the instant case is somewhat comparable to that in *Gates v. Pennsylvania R. Co.*, 150 Pa. 50, 24 A. 638, where the railroad was charged with negligence in failing properly to maintain the approach to a bridge over its right of way. This Court stated, at p. 53: "Whether or not the defendant was legally bound to continue the exclusive care and maintenance, it did so in fact, and having undertaken the duty was liable for negligence in its performance. That the town might have neglected its duty, either in not assuming charge itself, or in not enforcing proper performance by the defendant, was a question that might arise between the party injured and the town when the latter should be sued, but clearly cannot affect the question of the defendant's liability for the negligent performance of a duty it had in fact undertaken."

Defendant's final contention is that it is entitled to a new trial by reason of an error committed by the court below when it charged the jury that the crossing was public. This argument is clearly untenable in view of what we have said above. The court correctly charged that the jury must determine whether defend-

ant had, in fact, been negligent in its maintenance of the crossing under the circumstances of the case and whether that negligence was the proximate cause of plaintiff's injury. Under the uncontradicted testimony in the case, all of which was adequately and fairly explained to the jury, defendant's duty, whether the crossing be considered public or private, would be exactly the same. The slight inaccuracy complained of in the charge cannot have injured defendant in any way and cannot be considered sufficient to compel this Court to order that a new trial be granted.

Judgments affirmed.