Robert A. GARR and Lorraine Garr,
his wife, Appellees,

v.

UNION CARBIDE CORPORATION,
Appellant.

No. 78–1208.

United States Court of Appeals,
Third Circuit.

Argued Sept. 29, 1978.

Decided Dec. 19, 1978.

Robert C. Daniels, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for appellees.

Glenn C. Equi, Robert Needle, Philadelphia, Pa., Harvey, Pennington, Herting & Renneisen, Philadelphia, Pa., for appellant.

Before SEITZ, Chief Judge, HUNTER, Circuit Judge, and LACEY,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Union Carbide Corporation seeks to overturn a verdict in a personal injury suit rendered in favor of the plaintiff, Robert A. Garr. The jury awarded damages against Union Carbide, grounded in negligence, for failing to repair the defective sidewalk on which Garr fell. At trial Union Carbide moved for a directed verdict and judgment notwithstanding the verdict, contending that Garr was contributorily negligent as a matter of law. The district court denied the motions and entered judgment for Garr. We reverse.

### I.

Garr drove delivery trucks for Union Carbide. He had been hired by Eastern States Transportation Company which provided his services to Union Carbide.[1] Between 8:30 and 9:00 on the evening of September 24, 1973, Garr parked his car as required in the lot reserved for the drivers from Eastern States Transportation Company. The lot is located just outside the main gate of the Union Carbide plant. The drivers' room where Garr reported, as usual, for his work assignment is located approximately twenty-five yards inside the main gate. It is in a small "shack" which has a four feet wide concrete sidewalk running in front of and on both sides of it. The road to the main gate runs in a north/south direction passing in front of the shack, contiguous to the sidewalk. To reach the drivers' room from the parking lot, Garr walked south along the roadway. He testified that he did not use the sidewalk in the front of the building, instead staying on the roadway until he turned to enter the shack.

Garr was assigned that night to deliver a shipment of oxygen. Since Union Carbide's regulations require a driver hauling oxygen to use clean gloves, he started to return to his car in the parking lot for a new pair. He exited the drivers' room and noticed a car coming from the south along the roadway moving in the direction of the main gate. He turned north, walking along the sidewalk in front of the shack. At the northeast corner of the building, wash from a rainspout had broken up the sidewalk. The concrete had eroded, exposing the iron supporting rod and a depression below the rod of several inches. The affected area was approximately two square feet. When

---

* Honorable Frederick B. Lacey, United States District Judge for the District of New Jersey, sitting by designation.

1. An issue at trial was whether Union Carbide or Eastern States was Garr's "employer" as defined by the Pennsylvania Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, §§ 21–22 (Purdon 1952 & Supp.1978). If it is determined that Garr was Union Carbide's employee, his exclusive remedy would be workmen's compensation benefits. The jury found that Garr was an employee of Eastern States. Because of our resolution of the issue of contributory negligence, we need not reach this claim.

Garr reached the corner of the building, about twelve feet from the doorway, his foot slipped on some loose gravel and was caught in the depression between the iron supporting rod and the pavement. He testified that he flipped over backwards and fell, causing injury.

## II.

 Union Carbide does not challenge on appeal the finding of the jury that Union Carbide was negligent in failing to repair the defect in the sidewalk. Rather, Union Carbide contends that under Pennsylvania law, Garr was contributorily negligent as a matter of law and, as a result, is precluded from recovery.[2] In reviewing a jury award, we must follow the rule in Pennsylvania that contributory negligence is generally a jury question, *McIntyre v. Cusick*, 247 Pa.Super. 354, 359, 372 A.2d 864, 866 (1977), which should not be declared as a matter of law unless the "negligence is so clearly revealed that fair and reasonable individuals cannot disagree as to its existence." *Eder v. Lansberry*, 459 Pa. 621, 624, 331 A.2d 165, 166 (1975). *Accord, Evans v. Reading Co.*, 242 Pa.Super. 209, 215, 363 A.2d 1234, 1237 (1976). However, this court must review the jury verdict and correct it if the court finds as a matter of law that the plaintiff's "own negligence, however slight, contribute[d] to the happening of the accident in a proximate way." *McCay v. Phila. Elec. Co.*, 447 Pa. 490, 495, 291 A.2d 759, 762 (1972).

The analytical framework in Pennsylvania for determining whether Garr was contributorily negligent as a matter of law is provided by *Kresovich v. Fitzsimmons*, 439 Pa. 10, 264 A.2d 585 (1970). There, plaintiff was using a sidewalk which she had taken on numerous occasions and which she knew to be defective. She generally used the inside portion of the sidewalk where the pavement was in good condition. On this occasion, she stepped to the outside to avoid an oncoming pedestrian and tripped over an uneven block of cement. The Pennsylvania Supreme Court affirmed the lower court's holding, over a jury verdict awarding damages, that the plaintiff was contributorily negligent as a matter of law. The Supreme Court held that one who "walks into an obvious defect in a sidewalk is presumptively negligent and the burden is upon that person to show conditions outside of himself which prevented his seeing the defect, or which would excuse failure to observe it." *Id.* at 13–14, 264 A.2d at 586, *quoting Knapp v. Bradford City*, 432 Pa. 172, 174, 247 A.2d 575, 576 (1968).

 Garr contends that the general rule quoted in *Kresovich* and *Knapp* requires the further element that the accident occur "in broad daylight." Thus, the full statement of the rule reads: "One who, *in broad daylight*, walks into an obvious defect in a sidewalk is presumptively negligent . . ." *Kresovich*, 439 Pa. at 13–14, 264 A.2d at 586; *Knapp*, 432 Pa. at 174, 247 A.2d at 576 (emphasis supplied). Garr urges that when a plaintiff is injured on a defective sidewalk at night, the general rule does not apply. However, "broad daylight" goes to the element of knowledge; that is, the plaintiff will be presumed to have seen an obvious defect and have knowledge of its existence absent some excuse. Here, Garr already had knowledge of the defective sidewalk, having observed it on numerous prior occasions. At argument, Garr's counsel stated that Garr had worked the day shift within two days prior to his fall, at which time the defect in the pavement must have been obvious. The fact that Garr's accident occurred at night, then, does not distinguish *Kresovich* and *Knapp*.

 Nevertheless, Garr contends that he should not be held to have had legal knowledge of the defect on the night he fell

---

**2.** Federal jurisdiction is based on diversity. 28 U.S.C. § 1332 (1976). The accident occurred in Pennsylvania; neither party contest the application of Pennsylvania law.

Pennsylvania has enacted a comparative negligence statute which took effect on September 7, 1976. Pa.Stat.Ann. tit. 17, § 2101 (Purdon Supp.1978). It does not apply to any cause of action which arose prior to that date. *Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313 (1976).

because he had not used the sidewalk in approaching the drivers' room. He claims that he had not observed the broken sidewalk that evening and could reasonably expect that it had been repaired. Generally, a person has no duty to foresee the negligence of others. *Bortz v. Henne*, 415 Pa. 150, 152, 204 A.2d 52, 53 (1964); *Gregorius v. Safeway Steel Scaffolds Co.*, 409 Pa. 578, 582–83, 187 A.2d 646, 648 (1963). However, the doctrine does not apply where the injured party had prior knowledge of the defendant's negligence. *Dezelan v. Duquesne Light Co.*, 334 Pa. 246, 249, 5 A.2d 552, 554 (1939) (plaintiff "cannot unreasonably expose himself to a danger created by defendant's negligence when he knows or in the exercise of ordinary care should know of that danger"). According to Garr's own testimony, the pavement had been broken for at least four and possibly as many as six months. Further, he testified that he had personally reported the defective conditions to Union Carbide on several occasions. Garr could not reasonably have assumed that the defect had been repaired between the last time he had observed the broken concrete and the night of his fall. *Cf. Hill v. Richards*, 406 Pa. 452, 178 A.2d 705 (1962) (plaintiff contributorily negligent as a matter of law when he fell into an opening in the house he was building: he knew of the hole and was not entitled to rely on defendant's prior promise that he would fix it). We find, then, that Garr knew or should have known of the defective condition of the pavement at the time he fell.

Garr is faced, then, with the Pennsylvania rule that one who proceeds with knowledge of an obvious defect is presumed to be contributorily negligent. Garr seeks to meet his burden of rebutting the presumption by offering two excuses for his failure to avoid the known danger. First, he claims that he was distracted by the headlights of an approaching vehicle. Second, he contends that the accident occurred at night and the lighting was inadequate for him to observe the hole.

In support of his "distraction" excuse, Garr relies on *Pro v. Pennsylvania R. R.*, 390 Pa. 437, 135 A.2d 920 (1957). There, the plaintiff was injured at a railroad crossing. Having walked over the crossing regularly on her way to and from work, she was aware of the generally poor condition of the roadway. The moment before she tripped, she was distracted by the sound of an approaching car. The Pennsylvania Supreme Court refused to reverse a jury verdict awarding her damages. In affirming the lower court's denial of the defendant's motions for judgment n. o. v. and for a new trial, the court noted that, "absent the sound of the automobile, the . . . plaintiff would have been clearly guilty of contributory negligence as a matter of law." *Id.* at 440, 135 A.2d at 921. However, at the moment before her fall, "she was not required to focus her attention exclusively on the pavement immediately in front of her to discover possible defects therein," *id.* at 441, 135 A.2d at 922 (emphasis omitted), because she had an equal obligation to watch for approaching cars.

Two facts distinguish *Pro* from this case. In *Pro* the plaintiff was aware of the general condition of the roadway, but there was no evidence that she was aware of the particular defect on which she tripped. Here, Garr testified to the precise location and dimensions of the defect. Also, the distraction in *Pro* occurred the moment before the accident and prevented the plaintiff from observing the obvious defect. Since she was in possible danger from the approaching car, the court held that her failure to direct her entire attention to the roadway was not negligent. Garr, however, does not present a similar justification. He testified that the approaching car caused him to use the sidewalk rather than the roadway, not that his attention was justifiably diverted the moment before the accident.

█ Similarly, in *Kresovich* the plaintiff attempted to excuse her failure to avoid the uneven pavement by testifying that an approaching pedestrian distracted her from observing the obvious defect. The Pennsylvania Supreme Court, drawing on its prior decision in *Knapp v. Bradford City*, refused

to extend the distraction excuse to cases where, as here, the plaintiff "has already observed the defective condition." 439 Pa. at 14, 264 A.2d at 587.[3]

The second excuse on which Garr relies to rebut the presumption of contributory negligence is that the accident occurred at night and the area was only dimly lighted. The evidence established that the sidewalk was illuminated by a low wattage bulb over the door to the drivers' room. On similar facts, the court in *Jordan v. Pittsburgh*, 332 Pa. 230, 3 A.2d 677 (1938), rejected this excuse. There, plaintiff was getting out of an automobile in front of the building where she lived. It was at night, raining, and the area was lighted only by a small electric bulb above the door of the building. Plaintiff was injured when she stepped into a hole at the curb. The court set aside a jury verdict awarding the plaintiff damages and held that she was contributorily negligent as a matter of law.

It is evident that with full knowledge of the defective condition of the sidewalk, and almost the exact location of the hole into which she stepped, she deliberately got down from the automobile in its immediate proximity, although at the time she remembered the danger and was actually looking for it. That she could not see it because of the night, the rain, or the fact that it was filled with water, offers no excuse for her negligence. All these things were known to her, but in spite of all warnings, she accepted the risk. She was willing to test a known danger and, therefore, must accept the consequences.

*Id.* at 232–33, 3 A.2d at 678. *Jordan* establishes that the mere fact that the hole was not readily visible to Garr does not excuse his failure to avoid it when he had prior knowledge of its precise location and characteristics.

Finally, Garr's testimony establishes that his own lack of care contributed to the accident. On direct examination, the following colloquy occurred between Garr and his counsel:

Q. Well, what was it that caused you to trip on the night of your accident?

A. *Well, just not thinking.* I knew it was there and like I said, I was getting close to the half hour, coming out of the drivers' room, and ordinarily we just go out on the driveway and down. Not thinking I saw the vehicle come and truck park right away and I knew he had to come close to the curb.

App. at 46a (emphasis supplied). On cross, Garr repeated his reason for failing to heed the known danger:

Q. At anytime from the time you left this doorway to the time you fell did you look down onto the sidewalk?

A. No.

Q. And you knew the defect was there in that corner?

A. I knew it was there, but I had my mind on other things at that time.

Q. You were not thinking about it?

A. Right.

App. at 99a.[4] *See Roth v. Verona Borough*, 316 Pa. 279, 175 A. 689 (1934).

---

3. When a plaintiff demonstrates that a sudden emergency or peril causes him to step involuntarily into a defect in the sidewalk, the presumption of contributory negligence is rebutted even if the plaintiff had prior knowledge of the defective condition. *Fisher v. City of Philadelphia*, 112 Pa.Super. 226, 170 A. 875 (1934); *Dunfee v. City of Philadelphia*, 97 Pa.Super. 413 (1929). Garr has not contended that the approaching vehicle presented a danger to him, so he cannot benefit from this doctrine. *See Knapp v. Bradford City*, 432 Pa. 172, 247 A.2d 575 (1968).

4. Garr testified to his lack of care on other occasions during the trial. In describing the accident, he stated:

Well, rather than go into the road, because I knew the vehicle had to come over toward the sidewalk. I wasn't thinking. I wanted to get my gloves. I was running short of time, getting close to the half hour, so I just—not thinking—started walking down the sidewalk.

App. at 40a–41a. On cross examination, he repeated that his own lack of care, and not distraction from the passing car, caused him to

■ We are mindful of the strict standard of review of jury verdicts on the issue of contributory negligence. However, with knowledge of the precise location and dimensions of the defective pavement, Garr proceeded "not thinking" down the sidewalk. We hold that under Pennsylvania law, Garr was contributorily negligent as a matter of law. The judgment of the district court will be reversed.

use the sidewalk rather than the customary route down the roadway:

Q. Was there ànything that evening that prevented you from waiting for that car to pass and then step into the driveway and walk down the driveway?

A. Other than the fact I just had other things on my mind. I had to get the gloves. I was getting close to the half hour.

Q. Well, isn't it true that if you have a reason for extending beyond the half hour, like gloves, that you wouldn't be docked for that?

A. *You wouldn't be docked for anything.* App. at 96a.