J-A23036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN O'BRIEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY & MARY HOUSER | : | No. 162 MDA 2023 |

Appeal from the Order Entered December 28, 2022
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-20-05687

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: DECEMBER 21, 2023**

Plaintiff/Appellant, John O'Brien ("O'Brien") appeals from the order entered in the Court of Common Pleas of Lancaster County granting summary judgment to Defendants/Appellees Rodney and Mary Houser ("the Housers") in O'Brien's personal injury-based negligence action.   After careful consideration, we reverse and remand.

The present matter arises from O'Brien's slip and fall accident that occurred in August 2018 while acting in his capacity as a business invitee member of a painting crew hired by the Housers to paint the exterior of their home and other outbuildings/structures.   In accordance with the Housers' direction, O'Brien and the painting crew had been parking their work truck behind the home in a space designated for the Housers' residence rather than

_____

[*] Former Justice specially assigned to the Superior Court.

on the street fronting the home, where parking restrictions were enforced. N.T., 2/11/21 (O'Brien deposition), at 57-58. O'Brien's work on the first two days of the job was confined to the back of the home, and he did not walk from the back of the property to the front during this time. N.T. at 58-62.

After rain postponed work for a day, the painters returned with the intention of painting the front porch. N.T. at 63, 65. They parked temporarily at the front of the home to unload paint and then moved their truck to the designated parking space behind the Houser's back yard. N.T. at 64. To walk from the back yard of the property to the front yard, the workers needed to cross both a back yard brick patio and then a narrow, approximately two-and-one-half to three-foot wide, paved path—which they called the "alleyway", "little channel", or a "breezeway"—that ran between the Houser's and their next-door neighbor's homes. N.T. at 67-68, 73, 157. Prior to Appellant's fall in the alleyway, he had walked this path twice—once in each direction—without event. N.T. at 68.

While the workers were painting tall poles on the porch, the supervisor at the site asked O'Brien to get the 20-foot aluminum extension ladder from the truck and bring it to the front porch. N.T. at 66; N.T. 9/9/21 at 20. O'Brien, who was wearing standard painter's pants, a company-issued shirt, and what he described as an expensive pair of work boots in excellent condition, walked back to the truck, retrieved the ladder, and carried it parallel to the ground with his right hand in the middle to balance it and his left hand forward on the ladder to stabilize it. N.T., 2/11/21, at 69, 72.

O'Brien described the alleyway as "dark" at the time, especially because of the overcast conditions, and as he walked through it, he stepped onto a clump of wet moss and "basically took a face plant." N.T. at 73. He was unsure if the paved alleyway surface was brick, cobblestone, or asphalt, but he said the area contained much vegetation and was mossy, wet, and slick. N.T. at 73.

In fact, according to O'Brien, the entire backyard patio was covered with moss, and the workers were keenly aware of this condition during their first two days working on the back of the home, electing to avoid the mossy surface, when possible, by walking on the back yard grass instead. N.T. at 73-75, 78. O'Brien also clarified that while he had walked through the "alleyway" twice on the morning before his fall, he was forced to take a different foot path through it when he carried the ladder, as he needed to walk further to the side to avoid damaging the home and shrubs with it. He maintained that he did not see the moss on which he stepped and slipped at that moment. N.T. at 77-79, 82.

O'Brien sustained a torn right bicep tendon that required multiple surgeries, N.T. at 87, 91, and continues to cause significant pain, N.T. at 132, and a torn right rotator cuff. N.T. at 128-129.

Douglas Brubaker, the head painter of Two Dudes Painting and O'Brien's supervisor at the Houser job provided deposition testimony that the workers noticed wet moss was in between every brick on the patio and breezeway and

considered it to be slippery, but he did not recall anyone slipping on it before O'Brien's fall. N.T., 9/9/21 (Brubaker Deposition), at 26, 32-33. Brubaker testified that, to his recollection, O'Brien and the crew walked from the back to the front of the house every day on the job to do the front porch, N.T. at 34, but he corrected his testimony later to say that O'Brien had worked on the back of the home in the beginning of the job. N.T. at 39-40.

The spot where O'Brien fell, according to Brubaker, was dark and wet every morning because it was shaded by the neighbor's house. N.T. at 35. It was Brubaker recollection that it was not raining that morning because they were able to paint the exterior of the front porch. N.T. at 36.

Brubaker described the area where O'Brien fell as a "breezeway" between the houses where the brick patio transitioned to what he said was a concrete surface. N.T. at 35. When asked to estimate the dimensions of the mossy conditions in that area, he answered that it "was all over that patio, the brick patio on the back. It was all over. It wasn't just in that damp area. I mean, it was thicker there. But, like I said before, it was in between, like, each and every brick." N.T. at 36-37. He related that O'Brien and he discussed the mossy conditions prior to O'Brien's fall, but only to the extent that they believed "something ought to be done about it" and that using a blow torch on the moss on the brick represented an option. N.T. at 37.

Mr. O'Brien commenced this slip-and-fall personal injury action by filing a complaint in negligence on August 24, 2020. The Housers answered the complaint, and the parties initiated discovery. On May 25, 2022, the Housers

moved for summary judgment on theories that O'Brien had failed to establish a duty was owed to him as a business invitee because the alleged dangerous condition upon which he fell was open and obvious, and that the Housers did not have notice of said defect on their property. O'Brien denied the Housers' claims, arguing that as a business invitee performing work for the Housers he was owed a standard of care which the Housers breached when they allowed the obviously dangerous condition to exist, causing O'Brien serious injury.

After presiding over oral argument on September 6, 2022, the trial court entered its order of December 28, 2022, granting the Houser's Motion for Summary Judgment. Specifically, the trial court determined that O'Brien had "failed to identify on the record that [the Housers] knew, or should have known, of a dangerous condition on their property . . . [and] cannot prove, as required, that the Housers had a hand in creating the harmful condition, or that they had actual or constructive notice of a harmful condition." *Id.* at 598.

The trial court continued:

The record, viewed in a light most favorable to the Plaintiff [O'Brien], conclusively shows that Defendants [Housers] were not under a duty to take precautions against, or to warn of, any dangerous condition created by mossy bricks on their property, and the condition, if dangerous, was plainly known and obvious to [O'Brien] prior to his accident. [O'Brien] acknowledged the mossy bricks, that they had the potential to be dangerous, and, before the incident on the third day, made the conscious decision to walk on the grass instead of the bricks to avoid a potentially dangerous condition. [O'Brien] has failed to establish that [the Housers] had notice of any dangerous condition on their property, or that the condition, if present, involved unreasonable risk, that the mossy

bricks would not have been discoverable by an invitee or that [the Housers] failed to take precautions to protect invitees, and [O'Brien] has failed to establish that [the Housers] failed to exercise reasonable care.

While [the Housers] owed a duty of care to [O'Brien] as a business invitee, the facts of this case, including the known and obvious nature of the condition, acknowledged by [O'Brien], negates any such duty. There remains no genuine issues of material fact and [the Housers] are entitled to judgment as a matter of law. As such, [the Houser's] motion for summary judgment is hereby GRANTED.

This timely appeal followed.

Appellant O'Brien raises one issue for this Court's consideration:

Whether the Trial Court abused its discretion and misapplied the law when it made factual findings in the light most favorable to the moving party [the Housers] and concluded as a matter of law that Defendants [the Housers] did not owe Plaintiff [O'Brien] any duty of care?

Brief of Appellant, at 6.

When reviewing a challenge to the grant of summary judgment:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting ... summary judgment is plenary, and our standard of review is clear[;] the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Pergolese v. Std. Fire Ins. Co.***, 162 A.3d 481, 486 (Pa. Super. 2017)

(citation omitted). "Only when the facts are so clear that reasonable minds

could not differ can a trial court properly enter summary judgment." ***Straw v. Fair***, 187 A.3d 966, 982 (Pa. Super. 2018) (citation omitted).

Moreover, we recognize that:

"Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." ***Babb v. Ctr. Cmty. Hosp.***, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citation omitted), *appeal denied*, ... 65 A.3d 412 ([Pa.] 2013). Further, "failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." ***Id.***

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Id.*** [(]quoting ***Reeser v. NGK N. Am., Inc.***, 14 A.3d 896, 898 (Pa. Super. 2011) (citations omitted)[)].

***Shellenberger v. Kreider Farms***, 288 A.3d 898, 905-906 (Pa. Super. 2023) (quoting ***Truax v. Roulhac***, 126 A.3d 991, 997 (Pa. Super. 2015)).

Herein, Appellant O'Brien contends that the trial court erred in granting summary judgment in favor of the Housers, as sufficient factual evidence was presented through both Brubaker's and his deposition testimonies to establish a *prima facie* case of negligence on the part of the Housers. Relevant jurisprudence holds that to establish a cause of action for negligence, a plaintiff must demonstrate the following four elements:

(1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, *i.e.*, a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach.

**Shellenberger**, 288 A.3d at 906 (citation omitted). It follows that a plaintiff must show, *inter alia*, "that a defendant owed a duty of care, and that this duty was breached. Indeed, the issue of whether the defendant owed a duty of care to the plaintiff is the primary question in a negligence suit." **Id.** at 655.

There is no dispute that O'Brien was a business invitee of the Housers. The duty of care owed to a business invitee is the highest duty owed to any entrant upon land. **Truax**, 126 A.3d at 997. "The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discoverable with reasonable care." **Id.** (quoting **Charlie v. Erie Ins. Exch.**, 100 A.3d 244, 253 (Pa. Super. 1998)).

Our caselaw sets forth the duty that a possessor of land owes to business invitees as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

- 8 -

(c) fails to exercise reasonable care to protect them against the danger.

**Shellenberger**, 288 at 908 (citing Restatement (Second) of Torts, § 343).

Thus, as is made clear by section 343A of the Restatement,

a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*.

Restatement, *supra*, § 343A (emphasis added). For a danger to be "known," it must "not only be known to exist, but ... also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.* at 124 (quoting Restatement (Second) of Torts, § 343A, comment b).

The trial court appropriately acknowledged and adopted this heightened standard of care owed by the Housers, but we find that in applying it the trial court resolved issues of material fact that are properly within the province of a finder of fact to resolve. Notably, in asking the first question of the three-part inquiry into whether liability may lie for harm caused to a business invitee, the trial court reviewed the record and concluded that "Plaintiff [O'Brien] has failed to identify on the record that Defendants [the Housers] . . . should have known of a dangerous condition on their property [and,] [m]oreover, . . . cannot prove, as required, that Defendants [the Housers] . . . had actual or constructive notice of a harmful condition." Trial Court Opinion, 12/28/22, at 7.

When read in a light most favorable to O'Brien as the non-moving party, however, the deposition testimonies of O'Brien and Mr. Brubaker sufficed to create issues of material fact with respect to both O'Brien's and the Housers' respective knowledge of the alleyway conditions. Specifically, the painters alleged that the slippery condition of the wet, mossy brick patio as it led down to the "alleyway" or "breezeway" area where O'Brien slipped and fell was readily apparent. In fact, each indicated that the moss coverage on the property was ubiquitous and so concerning that the two men discussed possible remedies for it and shared the opinion that the Housers ought to have done something about the slippery conditions the moss created.

According to O'Brien, furthermore, the dim natural lighting and poor visibility in the alleyway between the houses that morning prevented him from spotting beforehand the clump of moss on which he stepped and slipped to his detriment. He asserted, however, that he immediately saw the moss patch on the pavement after he fell, and he described the moss at that location as even thicker than what existed on the patio.

Raised by such testimonies were questions of material fact regarding whether the Housers knew or should have known about the allegedly large amount of moss conspicuously covering the brick and asphalt walkways in their yard, about the alleged slippery conditions it caused in wet weather, and whether such conditions should have placed them on notice of an unreasonable risk of harm imposed on the painting crew who, foreseeably, would traverse these walkways when going between the rear lot parking space

and the front of the home in fulfillment of their work duties. Reasonable jurors could disagree on these issues of material fact.

The trial court also found Mr. O'Brien's acknowledgement that he worked despite his appreciation of the obviously dangerous conditions of the Houser's walkways had the effect of negating the Housers' duty of care toward O'Brien. In concluding that O'Brien's assumption of such a risk precluded his recovery, the trial court cites to our Pennsylvania Supreme Court's decision in **Carrender v. Fitterer**, 469 A.2d 120 (Pa. 1983), in which the Court discussed the relationship between the assumption-of-risk doctrine and the rule that a possessor of land is not liable for obvious dangers.[1]

**Carrender** involved an action in trespass brought by a patient who suffered injury from slipping on a patch of ice covering a small section of a parking lot owned by the chiropractors she was visiting. The facts established

_____

[1] We note that this Court has recently observed, "[w]hile assumption of the risk has not been formally abolished by our Supreme Court, this Court has acknowledged that it has fallen into disfavor, 'as evidenced by our [S]upreme [C]ourt's two ... attempts to abolish or limit it.' **Staub v. Toy Factory, Inc.**, 749 A.2d 522, 528 (Pa. Super. 2000) (*en banc*) (citing **Howell v. Clyde**, 620 A.2d 1107 (Pa. 1993) (plurality), and **Rutter v. Northeastern Beaver County School District**, 437 A.2d 1198 (Pa. 1981) (plurality))." **Babbish v. Pixie Paradise Child Care Ctr.**, (Pa. Super. filed May 11, 2020) (unpublished memorandum decision); **see** Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for persuasive value); **see also** Operating Procedure 65.37 (same). As such, we discuss **Carrender** to the extent the trial court in the case *sub judice* relied on the decision, distinguish it on its facts, and consider whether the deposition testimony at issue created a jury question regarding O'Brien's and the Housers' respective acts and states of mind under the relevant circumstances.

that plaintiff Carrender elected to park alongside the ice patch, the only one present on the lot, despite observing that other ice-free parking spaces were available. Even after confirming the ice was slippery by sliding her feet on it while remaining seated in the driver's seat, Carrender decided to alight her vehicle. She placed her hand on the neighboring car to maintain her balance while walking from the parking space, but when she returned to her car after the visit, she slipped and fell on the ice, sustaining a fractured hip. *Id.* at 122.

At trial, chiropractors sought an "assumption of the risk" instruction as a complete bar to recovery, but the trial court refused because doing so, in its opinion, was incompatible with Pennsylvania's comparative negligence statute at 42 Pa.C.S. § 7102. The jury returned a plaintiff's verdict, and a panel of this Court affirmed, ruling in part that the trial court had not erred in refusing to charge the jury on the defense of assumption of the risk.

Our Supreme Court granted the chiropractors' petition for allowance of appeal and reversed, concluding that, "as a matter of law, the chiropractor was under no duty either to take precautions against or to warn of the isolated patch of ice on the parking lot." *Id.* at 123. After setting forth the standard of care under Restatement 343, the high court found it determinative that chiropractors could have reasonably expected that the danger posed by the isolated patch of ice would be avoided by their business invitees:

> There was nothing presented on the record to indicate that, notwithstanding the obviousness of the danger, appellants [chiropractors] should have anticipated that the patch of ice might

- 12 -

go unnoticed by appellee or any other patient; on the contrary, appellants [chiropractors] could reasonably expect that, in light of the number of clear, convenient spaces available, appellee and other invitees would recognize the danger posed by the ice and choose to park in another, ice-free space to avoid it. **See** Restatement, supra, § 343A comment g.[fn]

---

Fn Comment g to section 343A provides that a public utility or a governmental unit, entities more likely to expect that an invitee will encounter danger on land than other landowning entities, see Restatement, supra, § 343A(2), nevertheless "may reasonably assume that members of the public will not be harmed by known or obvious dangers which are not extreme, and which any reasonable person exercising ordinary attention, perception, and intelligence could be expected to avoid. *This is particularly true where a reasonable alternative way is open to the visitor, known or obvious to him, and safe.*" (emphasis added). **See** § 343A Illustration 9 (steamship company not liable for injuries sustained by passenger who stumbles over trunk while "preoccupied with her own thoughts," where passenger had ample room for passage around trunk and other visible objects). **Compare Jones v. Three Rivers Management Corp***.,* 483 Pa. 75, 394 A.2d 546 (1978), and **Pro v. Pennsylvania Railroad Co.***,* 390 Pa. 437, 135 A.2d 920 (1957) (landowner liable where invitee's attention diverted by feature of premises).

---

In light of appellee's uncontradicted testimony, it must be concluded that the danger posed by the isolated patch of ice was both obvious and known, *and that appellants could have reasonably expected that the danger would be avoided.* Thus, appellee failed to establish the element of duty essential to a *prima facie* case of negligence, and appellants were therefore entitled to a judgment notwithstanding the verdict. **See Atkins v. Urban Redevelopment Auth. of Pittsburgh**, **supra** (judgment n.o.v. proper where danger of missing step obvious to invitee); **Knapp v. Bradford City***,* 432 Pa. 172, 247 A.2d 575 (1968) (judgment n.o.v. proper where plaintiff's own testimony indicated that danger was open and obvious).

**Carrender** 469 A.2d at 124 (emphasis added).

- 13 -

We find the present facts distinguishable from those of *Carrender*, however, as the record in the present matter, when read in a light most favorable to the non-movant O'Brien, does not compel the conclusion that the Housers reasonably could have expected the painters to avoid the slippery walkway where O'Brien sustained his injury. Unlike the "isolated patch" of ice in a parking lot that otherwise offered many ice-free, open parking space options to Ms. Carrender, both Brubaker and O'Brien testified in their depositions that the wet patches of moss causing slippery conditions stretched throughout the length of the hard surface walkways in the Houser's yard, including the location where Mr. O'Brien slipped and fell. Neither O'Brien nor Brubaker testified that O'Brien easily could have chosen a safer path, let alone one of equal or similar convenience, as was the case in *Carrender*.

Under the circumstances described by the two painters, the only options other than walking the direct route through the alleyway or breezeway to access the front porch consisted of either walking around the neighborhood block or defying the Housers' request and parking their trucks out front on pain of receiving a parking citation. Furthermore, the painters had significant work to do on both the front and back of the Housers' home, and a finder of fact could reasonably conclude it was foreseeable that, despite the alleged conditions, they would fail to protect themselves from dangers associated with the moss-covered walkways for the sake of completing their work. As this Court observed in *Staub*,

in a negligence context, where an employee is required to encounter a risk in order to perform his job, reasonable minds could disagree as to whether the employee "deliberately and with awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced the injury." *Howell [v. Clyde*, 620 A.2d 1107,] 1113 (Pa. 1993) (plurality). Thus the employee's "conduct is better judged by its reasonableness, that is, by negligence principles." *Fish*[*v. Gosnell*, 463 A.2d 1042, 1049 (Pa. Super. 1983)]. A trial court should not, therefore, decide the issue as one of duty or lack thereof; instead, the issue should go to the jury as one of comparative negligence.

*Staub*, 749 A.2d at 529–30 (Pa. Super. 2000).

Viewing the deposition record in a light most favorable to Mr. O'Brien as the non-moving party, we find jurors could fairly determine that he reasonably carried the ladder in a responsible manner through the alleyway as he knew it at the time and that the Housers had no realistic expectation that the painters would avoid using the walkways leading to the front yard in this manner. More broadly, under the alleged circumstances where the Housers had told the painters to park in the back, there exists a question of fact regarding whether the Housers thus had reason to expect that O'Brien and the painting crew would feel compelled in the ordinary course of their work to traverse the walkways, including the alleyway, despite the slippery conditions and would, to that extent, fail to protect themselves from such danger. Accordingly, we conclude that the trial court erred in resolving this question of disputed fact.

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of the Housers and remand for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/21/2023